## MATHEWS v. BUTTE MACHINERY CO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1923. Rehearing Denied March 12, 1923.)

### No. 3826.

1. **Receivers ⬤⇒90—Failure of owner of machinery leased to insolvent to exercise optional right to reclaim property not laches.**

   Failure of a lessor of drilling machinery to terminate the lease before expiration of the term, for default in payment of rental, even after appointment of a receiver for lessee, *held* not laches which deprived it of any rights in the property, where, under the contract, its action in that respect was optional, and where until the end of the term lessee had an option to purchase the property, and, if it did not, was required to return the property at its own expense.

2. **Receivers ⬤⇒90—Receiver held liable for rental under lease.**

   Where a receiver for a corporation took possession of, and listed as an asset, personal property in use by the corporation under a lease, and without applying to the court for instructions refused a demand by the lessor for its return, the court properly allowed as a claim against the estate the rental accrued at the time of the receivership and as an expense of the receivership rental after refusal of the demand.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

286 F.—51

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit in equity by W. H. Penner against the Drilling Development Company. Ed. Mathews, receiver for defendant, appeals from an order allowing the claim of the Butte Machinery Company. Affirmed.

Petition of the Butte Machinery Company, plaintiff, to compel receiver of the Drilling Development Company, defendant, to pay rental on certain mining machinery alleged to have been leased to defendant by plaintiff, and also to compel the receiver of the defendant to return the machinery from the defendant's mining property where located, or to allow the plaintiff to bring the machinery back and require defendant to pay the costs of such return.

F. E. McCracken, of Butte, Mont., for appellant.

Ed. Fitzpatrick, Canning & Geagan, and P. E. Geagan, all of Butte, Mont., for appellee.

Before MORROW and HUNT, Circuit Judges, and BEAN, District Judge.

MORROW, Circuit Judge. The appellee, Butte Machinery Company, was petitioner and plaintiff in receivership proceedings in the court below. The appellant, Ed. Mathews, was receiver of the Drilling Development Company, and respondent in these proceedings.

The Drilling Development Company, a Montana corporation, hereinafter referred to as the Drilling Company, was prior to November 21, 1918, in possession of and engaged in mining certain mining claims in Lemhi county, Idaho.

On November 21, 1918, plaintiff, Butte Machinery Company, hereinafter referred to as the Machinery Company, let to the Drilling Company certain mining machinery of the value of $5,865. Under the terms of the lease, the Drilling Company was to pay $1,500 as rent for the first four months, and $1,000 for the fifth month, with the option of purchasing the machinery during that time and at any time within two years thereafter, by paying the balance of $3,365; the $2,500 paid for five months' rent being applied on the purchase price. If the Drilling Company did not take advantage of the option to purchase within the five months, it was to pay $150 a month rental for each and every month thereafter "that the Drilling Company might continue to hold possession of said machinery or until said option be exercised, if exercised within the said continued period or extension"; the last-mentioned rental of $150 per month was not to be applied on the purchase price, as was the $2,500 paid for the first five months.

If the Drilling Company should violate any of the conditions of the lease, all the terms and conditions of the lease were, at the option of the Machinery Company, to continue in force until delivery was made, or the latter could, at its option, terminate the lease and take possession of the property. The Drilling Company also agreed to pay reasonable attorney fees in the event of suit or suits to enforce the contract.

In May, 1919, the Drilling Company's liabilities were over $50,000 over and above this alleged claim of the Machinery Company.

On September 17, 1920, W. H. Penner filed a petition in the District Court of Montana, praying for an order appointing a receiver for the Drilling Company. The latter made no resistance to the petition, but consented to the application for a receiver, and Ed. Mathews was appointed receiver by the court and qualified as such on September 18, 1920. The leasing agreement between the Machinery Company and the Drilling Company, providing for two years from April 21, 1919, did not expire until April 21, 1921, or seven months after the appointment of Mathews as receiver.

It was not until May 3, 1921, that the receiver applied to the District Court for, and obtained, an order directing the receiver to publish notice to the creditors of the Drilling Company in a newspaper of general circulation in Silver Bow county, Mont., twice a week for two consecutive weeks, requiring the creditors of the Drilling Company to present their claims to the receiver within 30 days after the first publication.

The Machinery Company filed its claim with the receiver within the time prescribed by the notice, and on July 13, 1921, made demand in writing on the receiver for possession of the machinery described in the contract. This demand the receiver denied August 13, 1921.

On July 13, 1921, the receiver petitioned the court for an order to confirm a reorganization of the Drilling Company, stating that he had come to a settlement or agreement with all claimants against the company except the Machinery Company, and that he believed a suit would be necessary to settle that claim.

On the 2d of August, having heard nothing of the demand of July 13th, the Machinery Company served on counsel for the receiver its petition for leave to sue the receiver and others, and presented and filed the same in court on August 8, 1921. On August 12, 1921, the court denied the petition, but with leave to the Machinery Company to have all rights determined in these proceedings without resorting to a separate suit.

On September 14, 1921, the Machinery Company filed a petition in the trial court for a hearing in that court to determine its claim for the balance of the rent and for the return of the property.

On October 31, 1921, upon the hearing of the petition, the court entered an order directing the receiver to pay the claim of the Machinery Company, pro rata on the amount due from the Drilling Company to the Machinery Company at the date of the receivership, amounting to $2,380 for and on account of rentals for property leased and hired; that the Machinery Company be also paid in full as an expense incurred by the receiver, and not pro rata with other claims, the sum of $150 per month from July 13, 1921, as and for rental and use of its machinery since that date held by the receiver against the will and without the consent of the Machinery Company up to and until possession of the leased property is restored to the Machinery Company at the place where the receiver assumed possession of it and in the condition it was in at that time.

From this decree the present appeal has been taken.

The possession of the Drilling Company of the property involved in this controversy, prior to the receivership, was the possession of a lessee, with the right to purchase for $5,865. The term of the lease and right of purchase was first for a period of four months, beginning November 21, 1918, and ending March 21, 1919, dependent upon the payment by the lessee of a rental of $1,500, and for a further period of one month from March 21, 1919, to April 21, 1919, upon the payment of a rental of $1,000. Both these payments were made by the lessee and applied upon the purchase price, leaving a balance due the lessor of $3,365.

The agreement provided for a further or second period of two years, ending April 21, 1921, during which time the Drilling Company had the right to retain possession of the property as a lessee upon the payment of a rental of $150 per month. During this period, the Drilling Company had the right of possession with right of purchase upon the payment of the balance due, without any deduction, however, on account of the payment of the rental of $150 per month. The lessee paid the rental of $150 for one month, and no more.

[1] It is contended by the appellant that the Machinery Company was guilty of laches in failing to enforce its contract against the Drilling Company from June, 1919, until June 21, 1921. The answer to this contention is this:

The lease and option between the Machinery Company and the Drilling Company was a subsisting contract whose optional terms to purchase did not expire until April 21, 1921. The order for the appointment of the receiver, made and entered on September 18, 1920, directed him to take possession of all the property of the Drilling Company, including leased property and including the machinery involved in this appeal, and enjoined all persons from interfering with any property in the hands of the receiver.

After the appointment of the receiver, the Machinery Company proceeded, with all diligence, pursuant to the notice of the receiver, to establish its claim and right to the property.

With respect to the termination of this lease, it was provided, in the agreement, that if the Drilling Company (the lessee) should violate any of its conditions, then all the terms, conditions, and agreements therein stipulated should, at the option of the Machinery Company (the lessor) continue in force until delivery of the property was made to the Machinery Company, in accordance with the terms of the agreement, or the Machinery Company might, at its option, terminate the lease and immediately enter into possession of the property.

In other words, upon the failure of the lessee to comply with the terms and conditions of the lease, the lessor might, at its option, accept a redelivery of the property by the lessee and thus terminate the lease; or the lessor might, at its option, terminate the lease and immediately take possession of the property. But the failure of the lessor to exercise its option did not release the lessee from any of its obligations under the agreement. The lessee was still required to redeliver the property, or surrender it to the lessor upon the option of

the latter.  The lessee did neither, and did not offer to do either.  The agreement expressly required that if the lessee did not exercise its option to purchase the machinery, it bound itself to return the machinery to the lessor at the expense of the lessee, the said return to be at Butte, Mont., or to any other point upon the order of the lessor which entailed no greater freight cost to the lessee than freight to Butte, Mont., in as good order and condition as the same then was, reasonable use and wear thereof and damage by the elements alone excepted.

[2] With respect to the relation of the receiver to his property, it is pertinent to bear in mind that he did not apply to the court for instructions and advice as to his duty in dealing with it and with the claim of the Machinery Company therein.  The rule upon this subject has been repeatedly declared by the courts, and is found clearly and distinctly stated in High on Receivers (4th Ed.) § 188:

"A receiver being always regarded as an officer of the court, and at all times subject to its direction and orders, it is proper in the discharge of his official duties, that he should on suitable occasions apply to the court for instruction and advice; and he is at all times entitled to such advice from the court, and should not hesitate to apply for it when questions of intricacy or difficulty occur.  Such an application may be made ex parte, although it is deemed the better practice to give notice to all parties in interest in the estate or fund.  And a receiver acts at his peril where he assumes to determine as between different claimants to the fund in his possession without seeking the advice of the court."

The receiver was a stockholder and director of the Drilling Company, and had been a director since March, 1920.  In his inventory of the property of the Drilling Company, filed in court, he returned the property here in controversy as the personal property of the Drilling Company.  He participated in the reorganization of the Drilling Company, and on the 14th of July, 1921, petitioned the court for an order confirming the reorganization of the company and directing a sale to the reorganized company of all the assets and property of the Drilling Company, both real, personal, and mixed, corporeal and incorporeal, excepting certain described property which does not include the property of the Machinery Company.  Petition was granted and the sale was made to the new company by the receiver, in accordance with the terms of the petition.

In determining that the receiver was liable for the rent of the property while in his possession, the court followed the rule declared by Judge Lurton (afterwards a Justice of the Supreme Court of the United States) in the Circuit Court of Appeals, Sixth Circuit, in Dayton Hydraulic Co. v. Felsenthall, 116 Fed. 961, 966, 54 C. C. A. 537, 542, as follows:

"The liability of the receivership for rentals during the time a receiver has actually used the leased premises has in general not been disputed.  In such cases, the controversy has turned mainly upon whether rent should be paid according to the stipulations of the contract between lessor and lessee, or upon the basis of a reasonable compensation to the lessor.  But it is said that this case is to be distinguished from all of the cases cited because the receiver neither adopted the lease, nor agreed to pay rents for the premises, and never took any actual possession.  It must be conceded that the record is barren of any facts which would authorize us to hold that the receiver has either

intentionally or impliedly adopted the lease, or that he has ever expressly agreed to pay rent for the premises, or that he ever had any actual physical possession of the leasehold estate. Notwithstanding these concessions, it is entirely agreeable to the equitable principles regulating the relation of such officers to leasehold estates, that, by acts and conduct not involving an actual occupation of the premises, a receiver may come under an equitable obligation to a lessor for rents accruing during the receivership. A court of equity will not suffer an injustice to be done a lessor by acts or conduct which amount equitably to an exclusion of the lessor from the premises, and an appropriation of them to the supposed benefit of the trust."

The rule declared in this case is applicable here.

We are of the opinion that the order of the District Court was, under all the circumstances, just and equitable, and should be affirmed, and it is so ordered.