**In re KABER IMAGING, INC., Misomex International Corp., and Misomex of North America, Inc., Debtors.**

Nos. 99–10302–MWV, 99–10303–MWV, 99–10304–MWV.

United States Bankruptcy Court, D. New Hampshire.

April 30, 2001.

188

William S. Gannon, Wadleigh, Starr & Peters, PLLC, Manchester, NH, for Chapter 11 Trustee.

Bret D. Gifford, Devine, Millimet & Branch, P.A., Manchester, NH, for Adam Fishman.

Peter N. Tamposi, Nixon, Peabody, LLP, Manchester, NH, for Official Committee of Unsecured Creditors.

Joseph D. Leverone, McLane, Graf, Raulerson & Middleton, Manchester, NH, for debtor.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the motion of Adam Fishman for allowance of an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A) in the amount of $27,440.18, consisting of $23,076.92 in postpetition wages and $4,363.26 in accrued postpetition vacation pay allegedly due from the above captioned debtors (collectively "Debtors"). The committee of unsecured creditors has objected to the requested allowance. A hearing on the motion was held on February 8, 2001, at which Mr. Fishman appeared and testified. At the conclusion of that hearing, the Court denied the request for vacation pay as there was insufficient evidence of the Debtors' policy on the accrual of vacation time and took the request for wages under advisement. Upon review of the evidence and the entire record the Court denies the remaining request for administrative expenses.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

Essentially, the facts are undisputed. Mr. Fishman began working with Kaber Imaging, Inc. ("Kaber") in 1996 and ultimately entered into an employment agreement with Kaber and Misomex International Corporation ("MIC") on July 1, 1997 to serve as Chief Financial Officer of the combined companies (collectively "Company"). *See* Movant's Ex. 1. Pursuant to that agreement, he was entitled to an annual salary of $150,000 per year, or $5,769.23 per two-week pay period. Both Kaber and MIC filed voluntary petitions under Chapter 11 of the Bankruptcy Code on February 3, 1999. Subsequent to the petition, Mr. Fishman continued to work until he submitted his resignation on or about June 9, 1999. The employment agreement was never assumed under § 365 of the Bankruptcy Code or otherwise approved by the Bankruptcy Court. Mr. Fishman testified that during the period of the post-petition employment, Company officers were paid when there were sufficient funds to do so and, consequently, he was not paid for four pay periods, namely: February 8, 1999 to February 21, 1999; May 3, 1999 to May 16, 1999; May 17, 1999 to May 30, 1999; and May 31, 1999 to June 13, 1999. There was no evidence produced to contradict this testimony.

The creditors' committee objected on two grounds. The first ground was that the motion was untimely. The Court, at the hearing, rejected this ground as no bar date had been set for administrative claims, the plan had yet to be filed and, consequently, there was no prejudice to creditors.

The second ground was that, pursuant to § 503(b)(1)(A) of the Bankruptcy Code, there must be a showing that the administrative expense was an actual and necessary cost of preserving the estate. At the February 8, 2001 hearing, the committee argued that the actions of Mr. Fishman and the rest of the management team were not beneficial to the estate, but in fact were detrimental. In support of this position, they cited the postpetition payment of an alleged prepetition obligation in the form of a signing bonus to employee Edward LaGraize, the failure to segregate a post-petition deposit received by Company for the purchase of one of its machines, and Mr. Fishman's action in voting against the sale of essentially all of the assets of Kaber to purchaser AGFA pursuant to a purchase and sale agreement that he had previously voted to approve. Finally, the committee argued that the Court should consider the approximately $30,000 payment that Mr. Fishman received for a non-compete agreement with AGFA, money they argued that would otherwise have gone to creditors as part of the sale to AGFA.

### DISCUSSION

It is undisputed that Mr. Fishman's employment contract was never assumed by Debtors as permitted by § 365(a) of the Bankruptcy Code or otherwise approved or ratified by the Court. Unlike rent due for nonresidential real estate pursuant to § 365(d)(3), the Court is under no obligation to enforce the contract terms of an unassumed prepetition employment contract. *See In re Midland Capital Corp.*, 82 B.R. 233, 239 (Bankr. S.D.N.Y.1988). However, claims for payment of wages earned during the postpetition operation of a Chapter 11 debtor are within the scope of administrative expenses allowed under § 503(b) of the Bankruptcy Code. *See Id.* at 238. Section 503(b) provides:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Therefore, the question the Court is faced with is the extent, if any, Mr. Fishman's activities were "beneficial" to the preservation of the bankruptcy estate. The Court will award Mr. Fishman the reasonable value of his services, which may or may not, depending on the circumstances, be what was specified in the employment contract. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

In preparation for writing this opinion, this Court has extensively reviewed the voluminous files of all three Debtors. Based on that review, the Court finds that it must deny Mr. Fishman his request for an administrative expense for the following reasons.

To say the least, this case had a tumultuous start. Disagreements were rampant. Management was represented by separate counsel. There was a shareholder dispute. The secured creditor sought liquidation. Overseas affiliates of the Debtor were in various stages of insolvency proceedings or threatened insolvency proceedings. Despite this start, however, after several contentious hearings, agreement was obtained to allow the case to move forward. Key to that agreement was the sale of Kaber Technology, which resulted in the sale to AGFA, which this Court approved on June 10, 1999.

During the period from February 3, 1999 until June 10, 1999, problems were brought to light resulting in this Court's appointment of a Chapter 11 trustee. Among those problems were the questionable payments that were made to Mr. La-Graize, which were not accurately reflected on the Debtor's operating reports.

Also, Debtors used the proceeds of a post-petition deposit on a machine they knew they could not produce for operating expenses. As to the latter, Mr. Fishman testified that he knew that this issue was problematic. Furthermore, Mr. Fishman participated in reaching a purchase and sale agreement with AGFA and then attempted to terminate the agreement by voting against the sale, his explanation being that he did not understand the process and assumed that there would be further negotiations with creditors to raise the agreed-upon price. Finally, and of significant importance, the disclosure statement filed on June 11, 1999 that was part of the notice of sale of Kaber's assets to AGFA, which this Court approved, included the following in its discussion of a plan of liquidation:

*Class 3—Priority Wage Claimants.* There are no such claimants entitled to payment. All employees, including those who performed services for Kaber, at all times were employed by [Misomex North America].

*See* Disclosure Statement For The Sale of Substantially All The Assets of Kaber Imaging, Inc. at 12. Thus, at least with respect to Kaber creditors, it was clearly indicated that there would be no employees asserting claims for wages. This statement proved to be incorrect.

■ This Court will not view the request for administrative expenses exclusively in terms of hindsight. *See Midland Capital Corp.*, 82 B.R. at 238 (noting that although an executive's decisions may be faulted in retrospect, they should be viewed in light of reasonable business judgment). However, in this particular case, the Court must view all of the actions taken by Mr. Fishman the context of their net effect on the preservation of the bankruptcy estate. During the period from February 3, 1999 to June 9, 1999 Mr.

Fishman received $28,846.15 in wages. Furthermore, as a result of his continued employment postpetition, he received additional benefits from the AGFA transaction in the form of payment for a non-compete agreement. As Debtors' chief financial officer, he was or should have been intimately familiar with the financial position of the Debtors and elected through June 9, 1999 to continue to perform services which he knew he may or may not be paid for. He chose to continue to serve as an officer without the benefit of a contract. The Court will not now award him more than he is entitled to on a quantum meruit basis. *See In re Bryant Universal Roofing, Inc.,* 218 B.R. 948, 955 (Bankr.Ariz. 1998); *Midland Capital Corp.,* 82 B.R. at 240.

Based on all of the above, the Court finds that the $28,846 already received by Mr. Fishman is fair consideration for the actual and necessary benefits received by the Debtors as a result of his employment. Accordingly, the motion for administrative expense is denied.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.