**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. AK-17-1285-JuBL |
| | ) | |
| COOK INLET ENERGY LLC, | ) | Bk. No. 15-00236 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SCOTT M. BORUFF, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| COOK INLET ENERGY LLC; U.S. | ) | |
| TRUSTEE; and CHARLES GEBHARDT, | ) | |
| Trustee for the Miller Energy | ) | |
| Creditors Liquidation Trust, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on March 22, 2018
at Pasadena, California

Filed - April 24, 2018

Appeal from the United States Bankruptcy Court
for the District of Alaska

Honorable Gary A. Spraker, Chief Bankruptcy Judge, Presiding

_____

Appearances:    William D. Sullivan of Sullivan, Hazeltine,
Allinson, LLC, argued for Appellant Scott M.
Boruff; David A. Zdunkewicz of Andrews Kurton
Kenyon LLP argued for Appellees Cook Inlet Energy
LLC and consolidated Debtors.

_____

Before: JURY[*], BRAND, and LAFFERTY, Bankruptcy Judges.

_____

   [*] Bankruptcy Judge Meredith Jury, Central District of
California, sitting by assignment.

JURY, Bankruptcy Judge:

Appellant Scott M Boruff (Boruff), former executive chairman, board member, and majority shareholder of Miller Energy Resources, Inc. (Miller), one of several related Chapter 11[2] debtors whose cases were jointly administered under the lead caption of Cook Inlet Energy, LLC., filed an application for an administrative expense claim for his prorated contractual salary for the four-month period between the filing date and plan confirmation, when his contract was rejected. The bankruptcy judge awarded him far less than the prorated salary, determining that Boruff had not proved that the reasonable value of the benefit to the estate of his postpetition services was more than the amount paid to other directors on the Miller board. Boruff asserts on appeal that the bankruptcy court applied the wrong legal standard in its analysis, imposing an incorrect burden of proof. We conclude that the court applied a correct legal standard and properly allocated the burden of proof. Therefore, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

On August 6, 2015, an involuntary chapter 11 petition was filed against Cook Inlet Energy, LLC (Cook), a subsidiary of

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

[3] Most of the material facts are undisputed and are taken from the Memorandum on Application of Scott M. Boruff For Administrative Expense Claim entered by the bankruptcy court on September 13, 2017.

Miller. Cook consented to entry of an order for relief under Chapter 11 on October 1, 2015, and on the same day Miller and several other related subsidiaries filed their own chapter 11 petitions, all of which were jointly administered. Miller and its subsidiaries (collectively, Debtors) were independent oil and natural gas exploration and production companies that focused on developing oil and gas properties in Alaska. Miller was a publicly traded holding company that owned, directly or indirectly, the subsidiaries. A significant drop in the price of oil, Miller's default on a credit agreement with its secured lenders, and an unsuccessful attempt to raise capital or sell some of the assets combined to cause financial distress for the Debtors. To assist it in finding buyers or creating a financial restructure, before filing Miller had employed investment bankers at Seaport Global Securities (SGS), whose continued employment was approved by the bankruptcy court.

Boruff was part of Miller's senior management group, holding the position of executive chairman when the petition was filed. He had been hired by Miller in August 2008 as its chief executive officer (CEO), a position he held until September 2014, when he was replaced by Carl Giesler and assumed the newly created position of executive chairman. Per Boruff's testimony, Giesler was brought in to manage the operations of the growing company while Boruff focused on the "big picture stuff," including putting financial deals together and overseeing the company's future development. He was employed under an employment contract (the Contract), which at the time of filing

paid him $795,000 a year or $66,250 per month.[4] The Contract's description of Boruff's job functions was imprecise, but it emphasized oversight of future development, including mergers and acquisitions. He worked primarily from his home in Tennessee, with occasional travel to Alaska and to Houston, where the Miller headquarters were located. After the drop in oil prices, he focused on seeking joint venturers or buyers of assets.

Prior to filing its voluntary petition, Miller formed a Restructuring Committee to solicit offers to purchase the company or its assets. Boruff was not initially included on this committee, which was made up of Giesler and the independent members of the board of directors. Per Giesler's testimony, as Miller's largest shareholder Boruff was excluded from the committee. Eventually, during the plan confirmation process, Boruff was added to the Restructuring Committee.

Soon after filing, Debtors filed Notices of Intent to Take Compensation for its officers, but did not include Boruff on that list. Although the Notices were not served on Boruff, he soon learned that he was not going to be paid in the chapter 11. Debtors moved expeditiously toward confirmation, filing their disclosure statement and plan just two and one half months postpetition. Soon after, they filed a Notice of Intent to Assume or Reject Executory Contracts and Unexpired Leases as part of confirmation. The Notice was served upon Boruff; his Contract was listed among those being rejected. Under the terms of the plan confirmed at a hearing on January 27, 2016, the Contract was

[4] Giesler earned $800,000 per year as CEO.

-4-

rejected. Boruff received no portion of his contractual salary postpetition.

On April 28, 2016, Boruff filed a timely Application for Administrative Expense Claim, seeking payment as an administrative priority claim under § 503(b)(1)(A)(i) of his contractual salary prorated over the four months between the petition date and the confirmation date. The Application asserted Boruff was entitled to be paid his full salary because he remained employed under the Contract while the chapter 11 was pending until rejection of the Contract at confirmation. The Application contained scant legal argument other than reference to the statute itself.

Debtors opposed the Application, citing numerous cases, including NLRB v. Bildisco and Bildisco, 465 U.S. 513 (1984) and In re Bryant Universal Roofing, Inc., 218 B.R. 948 (Bankr. D. Ariz. 1998), for the principle that although the wages established in a prepetition employment contract may be probative evidence on an administrative priority claim, the claimant must prove the value of the benefit to the estate by a preponderance of the evidence. They asserted that Boruff failed to show how his role as executive chairman had benefitted Debtors any more than the services of other board members, who had been paid less than $15,000 each.

Boruff replied, arguing that because Debtors did not terminate the Contract until the confirmation date, he continued to perform the duties of executive chairman valued at the contractual rate and these services were presumed beneficial to the estate. He construed Bildisco and Bryant Universal Roofing

-5-

to support his assertion that the benefit was set by the contract rate paid to an employee, so long as the employee continued working for the debtor, until the contract was rejected. The gist of his argument was that an employee was not required to prove the benefit to the estate beyond the contractual salary.

The bankruptcy court determined that an evidentiary hearing would be necessary to rule on the amount of the administrative claim, and after almost a year for discovery and other preparation,[5] that hearing took place on May 17, 2017. Boruff and Giesler testified at the hearing. Exhibits, all admitted by stipulation, included declarations and deposition transcripts of other witnesses as well as pertinent documents. Boruff's testimony described in general the services he performed both pre- and post petition, which included his efforts to find a buyer for assets and his participation on the Restructuring Committee. Giesler also described the scope of his own postpetition duties and the general reorganization efforts which led to plan confirmation. He testified that the salaried management personnel who were listed in the Notices to be paid postpetition, and whose contracts were assumed, were specified by the lenders, who excluded Boruff. He also described the efforts by SGS to procure buyers, which substantially overlapped with any efforts of Boruff.

At the close of testimony and oral argument, the bankruptcy court requested another round of briefing. In his Post-Hearing

---

[5] Much of the delay was caused by scheduling issues of the parties and the court.

Memorandum of Law, Boruff argued for the first time that the statute itself, § 503(b)(1)(A)(i), provided that wages, salaries, and commissions for services rendered after the commencement of the case were *de facto* "actual, necessary costs and expenses of preserving the estate" and that beyond showing that claimant worked postpetition, no further proof in support of a § 503(b) administrative claim was necessary. He then cited Bryant Universal Roofing and other cases which he believed supported his assertion that a contractual salary was presumed to be the value of the benefit to the estate without further proof.

Debtors' simultaneous brief emphasized that the statute and case law gave Debtors an express right to assume or reject contracts through the time of confirmation without the obligation to pay for contracts that did not benefit the estate. Contrary to Boruff's view, the majority of courts placed the burden on the claimant under the rejected contract to establish the beneficial value of the services to the estate. They urged the court to adopt the analysis in a factually similar case, In re Health Diagnostic Laboratory, Inc., 557 B.R. 885 (Bankr. E.D. Va. 2016). That case emphasized the "heavy burden" on the administrative claimants to show an "actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. at 898. Debtors argued that the admitted evidence fell far short of proving that the reasonable value of Boruff's postpetition services should be measured at the Contract rate. They suggested that he be reimbursed at the same rate as other board members.

The bankruptcy court issued its Memorandum on Application of

Scott M. Boruff for Administrative Expense Claim in September 2017, concluding that Boruff had failed to demonstrate that the reasonable value of his postpetition services was more than would be paid to him as a board member and member of the Restructuring Committee. In the Memorandum the court recounted the scope of work Boruff performed for Debtors, which included his efforts to negotiate with potential buyers of the assets, a service being primarily provided by Debtors' investment banker SGS, his chairman's role at three board meetings, and his attendance at Restructuring Committee meetings. It noted there was little concrete evidence of the time actually expended on these tasks,[6] and Boruff had not independently proved a reasonable value for his services other than to point to the contractual salary. After a review of the case law, the court concluded that "[Miller] has rebutted any presumption that the pre-petition employment contract states the reasonable value of Boruff's post-petition services."[7] Although it found that Boruff's efforts to find a buyer were of some value, his prepetition salary had no relation to those benefits and no other evidence supported an award greater than the sum received by other board members, $15,000.

The court entered an order consistent with the conclusions in the Memorandum, which Boruff timely appealed.

---

[6] Phone records showed only a few hours of actual time on calls. The meeting time was also estimated at a few hours.

[7] Memorandum on Application of Scott M. Boruff for Administrative Expense Claim, p. 20.

-8-

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Did the bankruptcy court apply the proper legal standard to Boruff's application for an administrative claim for wages and salary under § 503(b)(1)(A)(i) when it determined that the Contract salary rate was not binding and that Boruff had the ultimate burden of proving the benefit to the estate and the reasonable value of his postpetition services?

B. Is the contractual salary in a rejected executory employment contract the presumptive value of services rendered postpetition for an administrative claim under § 503(b)(1)(A)(i)?

C. Did the bankruptcy court abuse its discretion in partially granting Boruff's application and awarding him $15,000 rather than the contract rate of $252,657.63?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's order allowing or disallowing an administrative claim for abuse of discretion. Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.), 294 B.R. 306, 309 (9th Cir. BAP 2003), citing Teamsters Indus. Sec. Fund v. World Sales, Inc. (In re World Sales, Inc.), 183 B.R. 872, 875 (9th Cir. BAP 1995). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings are illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We review legal issues de novo and factual issues for clear error. See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011). However, where the facts are undisputed, the issue is purely one of law subject to de novo review. Kipperman v. IRS (In re 800Ideas.com), 496 B.R. 165, 171 (9th Cir. BAP 2013) (citing Elliott v. Four Seasons Props. (In re Frontier Props., Inc.), 979 F.2d 1358, 1362 (9th Cir. 1992).

Whether the bankruptcy court identified and applied the correct burden of proof is a question of law we review de novo. Margulies Law Firm v. Placide (In re Placide), 459 B.R. 64, 71 (9th Cir. BAP 2011) (citing People's Ins. Co. Of China v. M/V Damodar Tanabe, 903 F.2d 675, 682 (9th Cir. 1990)). We also review issues of statutory interpretation de novo. Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012).

We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected or even considered that ground. Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).

### V.  DISCUSSION

Recognizing that the clearly erroneous standard of review of the bankruptcy court's factual findings is an unsurmountable barrier to success in this appeal, Boruff seeks de novo review, asserting that the court applied the wrong legal standard for two separate and distinct reasons. First, he argues that the construction of the statute whereby wages and salaries are specifically enumerated as included in "the actual, necessary costs and expenses of preserving the estate" should end the inquiry; all he needed to demonstrate to the bankruptcy court for

an administrative priority claim was that he worked for Debtors postpetition until confirmation and had an employment contract which set his salary. In the alternative, he submits that Bildisco, when referencing payment for postpetition performance under an executory contract, holds that the contract price is the presumptively reasonable value of services; Debtors must rebut that presumption with contrary evidence. Further, he argues that subsequent case law supports this interpretation of Bildisco. The effect of this second argument is a burden shift contrary to that normally applied in claims litigation, such that the ultimate burden of persuasion falls upon the objecting party. As our analysis below shows, we disagree with both assertions.

Before tackling Boruff's theories, however, it is helpful to review the well-established burden shifts in claims litigation and specific application of these standards to allowance of administrative expense claims. Addressing allowance of claims in general, a claim is deemed allowed absent objection from a party in interest. § 502(a). A mere formal claim objection, without evidence, cannot defeat a claim if the claim is presumed to be valid under Rule 3001(f). Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000). To overcome this presumption, the objecting party must present evidence with probative value equal to that of the proof of claim to rebut the claim. Id. If the objecting party successfully rebuts the presumption, the claimant bears the burden of proof to show by a preponderance of the evidence that its claim is valid, and the "ultimate burden of persuasion remains at all times upon the claimant." Id. at 1039.

-11-

Administrative priority claims under § 503(b)(1)(A) are held to a stricter standard. Because they must be presented to the court by motion, they are not deemed allowed as priority claims. The statute provides as follows:

> (b) After **notice and a hearing**, there shall be allowed, administrative expenses. . .including--
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including--
> >
> > > (i) wages, salaries, and commissions for services rendered after the commencement of the case;

(emphasis added).

As noted in the seminal Ninth Circuit case on administrative claims, Burlington Northern Railroad Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.), 853 F.2d 700, 706 (9th Cir. 1988):

> The statute is explicit. Any claim for administrative expenses and costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors. [citations omitted] The terms "actual" and "necessary" are construed narrowly so as "to keep fees and administrative costs at a minimum." [citations omitted] An actual benefit must accrue to an estate. [citations omitted] Additionally, keeping costs to a minimum serves the overwhelming concern of the Code: Preservation of the estate. [citations omitted] This limitation is necessary to protect the limited assets of the estate for the benefit of the unsecured interests and is particularly important in a Chapter 11 case where a partial liquidation is necessary to facilitate reorganization.

Dant & Russell and the statute itself make it clear that an administrative claimant must present its claim at a noticed hearing and, like any other moving party, bear the burden of persuasion by a preponderance of the evidence to meet the strict standards set, keeping in mind the policy behind the allowance of such claims. See Shin v. Altman (In re Desert Springs Fin. LLC), No. CC-16-1374-KuFL, 2017 WL 1434403 (9th Cir. BAP Apr. 20, 2017)

-12-

(citing Lundell, 223 F.3d at 1039 for the burden and preponderance of the evidence standards).

Against this backdrop, Boruff asserts that the statute itself has carved out wages and salaries as automatically entitled to administrative expense priority, without more. He cites no case law for this novel argument[8], nor does he present a statutory construction analysis of the statute to arrive at that conclusion. Rather, he merely asserts that since the statute says wages and salaries for postpetition services are included in the actual, necessary costs of preserving the estate, the value of those services is measured by the terms of a prepetition employment contract which was not assumed. No other court has read § 503(b) in that manner, nor do we. The words alone do not take us there, and the policy which requires that such expenses be limited to those of actual benefit to the estate mandates against such interpretation.

Beyond common sense, this assertion fails for additional reasons, particularly when considering wages set by a prepetition employment contract which has been rejected under § 365(a). First, if Congress had meant the rejecting debtor or trustee would be bound to pay the contract rate until rejection, it would have said so explicitly, as it did for rents due under an unexpired lease. Section 365(d)(4) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L.

---

[8] None of the cases cited by Boruff nor by Debtors even ponder this argument and we could find no authorities that suggest that the question of "if" and "how much" postpetition wages are entitled to priority treatment is simply answered by the statute itself.

98-353, 98 Stat. 333 (1984). That bill required a trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease while the trustee decided whether to assume or reject the lease. 130 Cong. Rec. S8, 994-95 (daily ed. June 29, 1984) There is no parallel provision for wages and salaries under an operative employment contract prior to assumption or rejection. If Congress had intended such result, it would have said so explicitly.

In addition, such reading would eviscerate a significant advantage to a debtor in possession provided by § 365(a), which is a breathing space to determine whether continuing to pay an employee at a potentially onerous prepetition salary will be a benefit to the estate. If a debtor is required to pay that contract rate pending rejection even if the contract is not eventually assumed, a rush to early rejection without the attributes of a full analysis is likely to occur. Nothing requires a debtor in possession to decide whether to assume or reject prior to the confirmation date, and this section of the Code cannot be read to mandate an earlier decision.

Having addressed this novel statutory argument, we now turn to the issues with which the bankruptcy court tussled when ruling on the administrative claim application: did Bildisco and its progeny create a presumption that the contract rate is the reasonable value of Boruff's postpetition services which must be rebutted by Debtors and if so, did Debtors rebut it, or is the Contract accorded some lesser weight? The bankruptcy court

-14-

found, equivocally,[9] that if there was a presumption, Debtors had rebutted it. We choose a cleaner view: although the rate for payment under a rejected executory contract has some bearing on the court's discretionary determination of the benefit of postpetition services to the estate, such rate is not presumptive as the reasonable value, and a debtor in possession need not rebut it. The burden falls upon the applicant to prove the value.

We begin, as we should, with the Supreme Court's decision in Bildisco, then proceed to the subsequent cases, mostly at bankruptcy court level, which have interpreted and applied that ruling. In Bildisco, the Court held that a collective bargaining agreement, like any other executory contract, was subject to rejection by a debtor in possession and that the debtor in possession did not commit an unfair labor practice when, before the court-ordered rejection, it unilaterally modified or terminated a provision of the agreement. In addressing an argument of the NLRB about the effect of § 365(g)(1)[10] the Court stated that the rejection was a breach, creating an unsecured

---

[9] "Rather, the court concludes that [Miller] has rebutted **any presumption** that the pre-petition employment contract states the reasonable value of Boruff's post-petition services." Memorandum at 20 (emphasis added).

[10] Section 365(g)(1) provides "except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease – (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition."

-15-

prepetition claim. However, "[i]f the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services. . . , which, depending on the circumstances, may be what is specified in the contract." Bildisco, 465 U.S. at 531.

The Court was addressing the evidentiary impact of the terms of such rejected contracts on the value of postpetition performance in the broadest context, accounting for the entire panoply of possible agreements. Such contracts would range from employment contracts, leases of residential property, supplier or executory sales contracts and others. The evidence which might be presented to establish the reasonable value of that performance could vary considerably, depending on what the contract covered. The Court gave the trial courts unlimited discretion to determine whether such postpetition services were "actual, necessary costs and expenses of preserving the estate" and how to measure the value of such services in light of the benefit to the estate. Recognizing the breadth of potential evidence, the Court provided only a generic road map by saying "depending on the circumstances" and "**may** be what is specified in the contract." The language used allowed a court tasked with determining the value of goods delivered postpetition, where there was no real debate about the level of performance under the contract and where arms' length parties had negotiated the value of such goods, to use the contract for considerable evidentiary weight in valuing the benefit to the estate. On the flip side,

-16-

where the performance of an executory contract was more subjective and measuring the postpetition benefit to the estate more nuanced, such as a management employment contract, the trial court could put the contract price in the mixer with other evidence and accord it whatever weight it deserved.

Not surprisingly, the subsequent case law, when applying the Court's direction in the context of a rejected employment agreement, has almost uniformly ruled that although the contract wages are probative, they are not binding, and courts have not given them presumptive weight. The Ninth Circuit has not addressed this precise issue in a published opinion,[11] but the analysis in a First Circuit opinion is compelling. In Mason v Official Committee of Unsecured Creditors (In re FBI Distribution Corp.), 330 F. 3d 36 (1st Cir. 2003), the court turned away a former executive's argument that the termination benefits (severance pay) in her rejected prepetition employment and retention agreement should be accorded administrative priority status. Id. at 48. In arriving at this conclusion, the court first looked to the widely accepted standard for awarding an administrative expense: (1) it must have arisen from a transaction with the debtor in possession postpetition and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way. Id. at 42, see Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart), 536 F.2d 950, 954 (1st Cir. 1976). Then, recognizing that Mammoth Mart left open how the terms of the prepetition contract affected the measure of benefit to the estate, it looked to the broad language of

---

[11] Or any unpublished one that we could locate.

Bildisco for direction. Id. at 43-44.

Following that direction, it explicitly rejected the assertion that the prepetition contract controlled the amount of such claim because of Bildisco's ruling that the rejected employment agreement was unenforceable against the debtor in possession. At most, it found that the contract had **probative**, not **presumptive** weight and was not dispositive on the value of the benefit. Id. In so ruling, it noted, as we did above, that Congress had specifically provided in § 365 that the contractual rent in an unexpired lease of nonresidential real property was determinative of the administrative claim before rejection but had not so provided for any other executory contract, including an employment contract. Id. at 44-45. It also opined that if it accepted the executive's argument that he was entitled to an administrative claim for severance pay, it would be blessing an "implicit assumption" of the executory contract, something which § 365 forbids. Id. at 45.

In a case factually similar to the case at hand, where the former CEO and a board member had filed administrative priority claims based on rejected prepetition contracts, In re Health Diagnostic Laboratory, Inc., 557 B.R. 885 (Bankr. E.D. Va. 2016), the court ruled that insofar as the claimants sought administrative priority payment for postpetition services,[12] they

---

[12] The case was complex because it considered applications for administrative expenses for (a) the prepetition value of the contracts without providing postpetition services, (b) expenses potentially arising from indemnification claims under the contracts, (c) compensation for postpetition services, and (d) attorney's fees. Only the compensation for postpetition services is relevant to our ruling.

carried a "'heavy burden of demonstrating that the [postpetition services for which they seek compensation] provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets.'" Id. at 898 (quoting In re Bernard Technologies, Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006)). Such proof must be made by a preponderance of the evidence. Id. The motion before the court was brought on summary judgment by the Liquidating Trustee, so the bankruptcy court found that factual disputes as to the reasonable value of the services prevented a final merits ruling. However, in addressing the evidence which might be pertinent to its final ruling, it gave no weight to the terms of the prepetition contract and made no mention of Bildisco at all. The only presumption applied by the court was that a debtor's limited resources should be distributed equally among its creditors such that administrative priority status should be strictly construed. Id. at 893.

The bankruptcy court in In re Kaber Imaging, Inc., 262 B.R. 187 (Bankr. D.N.H. 2001), construed Bildisco to specifically hold that a rejected contract could not be the proper measure of value. It ruled that because the former chief financial officer's contract was not assumed by the debtor in possession, he was only entitled to the quantum meruit value of his postpetition services. Id. at 191. The court placed no presumptive weight on the wages and vacation pay specified in the rejected contract. In addition, because the CFO's executory contract was not enforceable until assumed, that the debtor in possession had delayed in making its decision to reject the contract until

-19-

confirmation had no bearing on the effect of the contract on the amount of the claim given administrative priority. Id. at 190.

Not citing Bildisco but following closely the First Circuit ruling in FBI Distrib. Corp., the court in In re Bernard Technologies, Inc., 342 B.R. 174 (Bankr. D. Del. 2006) found that a debtor's CEO was not entitled to his contract rate of pay because his employment contract was never assumed, giving it only "minimal probative value." Id. at 178. The CEO was only entitled to the reasonable value of his services to the extent they resulted in an actual benefit to the estate. Id. at 179.

The only Ninth Circuit case which gave presumptive weight to a cost specified in a contract rejected under § 365 dealt with an entirely different measure of monetary value: the monthly rental value of farm equipment. Thompson v. IFG Leasing Co. (In re Thompson), 788 F.2d 560 (9th Cir. 1986). The court ordered remand because the bankruptcy court had made inadequate factual findings on whether specific pieces of equipment were actually used to the benefit of the estate. In so doing, the court stated that the rent reserved in the lease was the presumptive evidence of fair and reasonable value which could be rebutted. The court of appeals then clarified that the bankruptcy court was not bound by the terms of the lease:

> When a lease is ultimately rejected but its interim continuance was an actual and necessary cost and expense of the estate, the allowable administrative expense is valued not according to the terms of the lease, but cf. Mathews v Butte Machinery Co.,286 F. 2d 801, 805-06 (9th Cir. 1923); Dayton Hydraulic Co. v Felsenthall, 116 F. 961, 966, 969, (6th Cir. 1902), but under an objective worth standard that measures the fair and reasonable value of the lease.

Id. at 563.

Despite the reference to a presumption in Thompson, we do not believe the Ninth Circuit would extend such presumption to a rejected employment contract because the measure of value of management services as a benefit to the estate is substantially different from calculating the rental value of equipment. An objective marketplace would control the contracted lease prices for the equipment whereas no such marketplace would exist for management services. Under the broad guise of Bildisco, a court's discretion to value the benefit of management services should be unfettered by any presumption.

Boruff cites two bankruptcy court cases, one published and one unpublished, to support his argument that his employment contract should be given presumptive weight in determining the value of his postpetition service. Digging into these cases, however, shows that neither actually helps his argument. In Bryant Universal Roofing, 218 B.R. 948, chapter 7 debtor's former chairman of the board moved in pertinent part to compel payment of his administrative claims for salary owing under his employment agreement. In the context of a summary judgment motion, after citing Dant & Russell for the accepted Ninth Circuit standard that a claim for administrative priority is construed narrowly against the applicant, the bankruptcy court tussled with whether the services provided by movant should be allowed as an administrative claim based on the contract or upon the basis of quantum meruit. Id. at 955. After considering the applicable language from Bildisco, and recognizing "[t]here is a paucity of authority on the extent to which the terms of an unassumed pre-petition employment contract govern the amount of

-21-

compensation due to an employee as an administrative expense," the court decided to use the contract rate as "persuasive", not presumptive. Id. at 956. In other words, the court put that evidence in the hopper along with other evidence to consider when making the factual ruling on value which could not be determined in a summary judgment motion. Therefore, Bryant Universal Roofing at best demonstrates that the weight to be given to the contract has not been determined in the Ninth Circuit.

In an unpublished decision, the bankruptcy court in the District of Columbia ruled the prepetition employment contract was "probative" on the issue of the value of postpetition services, but not dispositive. In re Ellipso, Inc., No. 09-00148, 2012 WL 827103, *4 (Bankr. D.D.C. 2012). However, the court explicitly cited Kaber for its holding that the terms of the contract do not determine the amount of the priority claim; the reasonable value was determined by all the evidence before the court. This case has limited value to support the presumption Boruff would have us accord his Contract.

After this review of the relevant authorities, we are of the firm conviction that the bankruptcy court here did not apply the wrong legal standard in a dispositive manner. The bankruptcy court equivocally found a presumption, but also found that Debtors overcame it. We hold more definitively that the contract price in a rejected employment contract is not presumptive of value in the first place. Neither the statute nor relevant case law supports the notion that the evidentiary weight of such terms creates a burden shift requiring Debtors to rebut the contractual wage. The Ninth Circuit in Dant & Russell ruled that such claims

-22-

are subject to high scrutiny, consistent with preserving the estate for distribution to general unsecured creditors. <u>Lundell</u> and a plethora of subsequent authorities make it clear that the ultimate burden of persuasion on any claim lies with the claimant. Absent some mandate to shift that burden where the claim is one for administrative priority - a highly scrutinized claim which can only be paid if the services provided a substantial benefit to the estate - we will not do so here. <u>Bildisco</u> says only that the bankruptcy court **may** consider the terms of the contact, **depending on the circumstances of the particular case**. At most, that statement gives the contract probative, not presumptive, value.

Boruff did not challenge the bankruptcy court's factual findings, where it weighed the sparse and indefinite evidence of the value of his postpetition services. We will not disturb its conclusion that he should be compensated at a rate comparable to what the other board members were paid. The court did not abuse its discretion.

## VI. CONCLUSION

The terms of a rejected prepetition employment contract are not presumptive on the value of postpetition services, creating a burden shift. Accordingly, we AFFIRM.