FILED

APR 26 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>RS AIR, LLC,<br><br>              Debtor. | BAP No.  NC-21-1227-BGT<br><br>Bk. No.  20-51604 |
| NETJETS AVIATION, INC.; NETJETS<br>SALES, INC.; NETJETS SERVICES, INC.,<br>             Appellants,<br>v.<br>RS AIR, LLC,<br>             Appellee. | **OPINION** |

Argued and Submitted on January 19, 2022 at Pasadena, California

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: BRAND, GAN, and TAYLOR, Bankruptcy Judges.

APPEARANCES

Kelly Singer of Squire Patton Boggs (US) LLP argued for appellants; Jennifer C. Hayes of Finestone Hayes LLP argued for appellee.

BRAND, Bankruptcy Judge:

**INTRODUCTION**

Appellants NetJets Aviation, Inc., NetJets Sales, Inc., and NetJets

Services, Inc. (collectively, "NetJets") appeal an order confirming the chapter

1

11[1] plan of debtor RS Air, LLC ("RS Air"). Specifically, NetJets appeals the bankruptcy court's prior order denying its objection to RS Air's subchapter V election, and the court's later ruling upholding the eligibility decision in confirming the plan.

NetJets argues that the bankruptcy court erred in determining that RS Air was eligible for subchapter V relief. According to NetJets, since RS Air had no profit motive, it was not "engaged in commercial or business activities" on the petition date pursuant to § 1182(1)(A).[2] NetJets argues that the bankruptcy court further erred by allocating the burden of proof to NetJets to establish that RS Air was not eligible for subchapter V. Finally, NetJets argues that the bankruptcy court erred in ruling that the law of the case doctrine precluded the court from reconsidering RS Air's eligibility for subchapter V when new evidence at the final confirmation trial demonstrated that it was ineligible.

We hold that a profit motive is not required to satisfy § 1182(1)(A). We further hold that the burden is on the debtor to prove subchapter V eligibility. Although the bankruptcy court ruled otherwise on that issue, such error was harmless, because the record established that RS Air met its burden of establishing its eligibility to proceed under subchapter V. Finally, we conclude

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] As relevant here, § 1182(1)(A) provides that the term "debtor" "means a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." NetJets does not challenge RS Air's eligibility based on

that any error the bankruptcy court made regarding its law of the case ruling was harmless, because no new evidence was presented at the final confirmation trial that the court should have considered or that would have changed the outcome. Accordingly, we AFFIRM.

**FACTS**

RS Air, a Delaware LLC doing business in California, was formed in 2001 by its sole member and manager, Stephen Perlman, for the purpose of using and providing aircraft transportation services, acquiring and selling interests in aircraft, and providing depreciation tax benefits to Perlman. From 2001 to 2017, RS Air's principal source of revenue from business operations was from providing flight services for Perlman and affiliated third parties and flying fragile technology prototypes to prevent damage from baggage handling on commercial flights. RS Air also obtained revenue from acquiring and selling fractional interests in aircraft.

Beginning in 2001, RS Air entered into a series of agreements to purchase or lease from NetJets fractional interests in private jets. NetJets is a private business jet charter company that sells fractional jet interests, charter jet flight time, and aircraft management services. NetJets actively marketed depreciation tax benefits as a key benefit to fractional jet ownership.

The parties had a good business relationship until July 2017, when one of the jets fractionally owned by RS Air was involved in a non-injury runway crash, which RS Air contends NetJets failed to disclose and was caused by a

---

debt limits.

NetJets pilot. RS Air ceased doing business with NetJets after the accident and was still not engaged in its normal flight operations when it filed for bankruptcy in November 2020. RS Air attributed its lack of operations to NetJets not allowing RS Air to use or sell any jets after the accident and the parties' falling out. Ultimately, the parties ended up in litigation in Ohio, with NetJets filing suit against RS Air for breach of contract and RS Air asserting counterclaims against NetJets for breach of contract and fraud.

## B.     The bankruptcy case and litigation over subchapter V eligibility

Just before trial was to begin in Ohio, RS Air filed a chapter 11 bankruptcy case and elected to proceed under subchapter V. NetJets is RS Air's largest, non-insider creditor and holds approximately 98% of the total non-insider debt.

### 1.     Objection to subchapter V designation

NetJets objected to RS Air's election as a subchapter V debtor, arguing that RS Air was not eligible for subchapter V because it was not currently "engaged in commercial or business activities" pursuant to § 1182(1)(A). NetJets argued that RS Air had no flight operations since at least 2017, no revenue or income since as early as 2012, and no employees. In fact, argued NetJets, RS Air had never been a revenue-generating business, and its sole purpose was to serve as the intermediary through which Perlman acquired interests in and paid for the availability and use of private jets. NetJets argued that it was RS Air's burden to establish eligibility for subchapter V.

In opposition, RS Air argued that ongoing operations, employees, or

4

historical profitability were not required for subchapter V eligibility. RS Air argued that it was currently engaged in business activities by (1) litigating with NetJets, (2) negotiating with NetJets to sell its fractional jet interests back to NetJets, (3) paying its aircraft registry fees, (4) remaining in good standing as a Delaware LLC, and (5) keeping its tax obligations current with the state of California and the federal government. RS Air also intended to resume normal flights operations with a different partner once able. RS Air argued that NetJets, as the movant, bore the burden of establishing that RS Air was not eligible for subchapter V.

The bankruptcy court overruled NetJets' objection to RS Air's subchapter V election ("Subchapter V Order"). First, it determined that NetJets, as the party challenging eligibility, had the burden to establish that RS Air was not eligible for subchapter V. Second, it found that RS Air was engaged in commercial or business activities on the petition date because RS Air: (1) transformed its business from flight services to investigation into and litigation with NetJets (its primary contractual party); (2) intended to resume fractional jet ownership with a different partner; (3) paid its aircraft registry fees; (4) remained in good standing as a Delaware LLC; and (5) filed its tax returns and paid taxes as required. The court rejected NetJets' argument that employees are required for eligibility, observing that many small businesses have no employees. Therefore, because NetJets did not meet its burden to establish that RS Air failed to satisfy the eligibility requirements of § 1182, RS Air would proceed as a subchapter V debtor.

## 2. RS Air's plan of reorganization

At an earlier plan confirmation hearing, Perlman testified that, while some income is generated from providing flights to him or his related entities, RS Air would have no projected disposable income within the next five years, if ever. Instead, the primary financial benefit obtained is a tax deduction for aircraft depreciation that flows through Perlman. As a result, he would pay all administrative expenses and contribute new value of $50,000 (later increased to $100,000), which was more than the expected disposable income of $0.

At the final plan confirmation hearing, RS Air's financial expert testified that the net present value of RS Air's projected disposable income was $8,200. Because RS Air's value in a traditional disposable income analysis was projected to be a large negative number in the three- to five-year period postconfirmation, the financial expert created an alternative model to capture nontraditional kinds of value (e.g., tax benefits and aircraft flight services) that would not be included in a traditional analysis. The expert's alternative model recognized that RS Air was set up primarily to create value as a tax benefit from owning a fractional aircraft share and providing aircraft flight services, not to create value from profit on income.

In opposing confirmation, NetJets again argued that RS Air was not eligible for subchapter V, and therefore the Plan did not meet the good faith requirement of § 1129(a)(3). NetJets argued that RS Air was not a business with income, the expert's financial projections improperly included indirect items of value such as the depreciation tax benefit, and the expert's financial

projections were based on non-GAAP and never-before-seen methodologies. NetJets contended that the real purpose of RS Air's subchapter V bankruptcy was to sustain a facade business with no operations or income to protect Perlman and affiliates and provide him with valuable tax benefits.

In confirming RS Air's third amended plan of reorganization (the "Confirmation Order"), the bankruptcy court found that the disposable income projections of Perlman and RS Air's financial expert were consistent with NetJets' argument that RS Air was not a business with income, but that whether RS Air generated income was not determinative for confirmation. The court decided that the law of the case doctrine precluded revisiting the issue of RS Air's subchapter V designation. However, the court noted that developing case law, which interpreted broadly the types of commercial or business activities that can satisfy § 1182(1)(A), supported its earlier decision that RS Air was engaged in commercial or business activities on the petition date. NetJets timely appealed the Confirmation Order, which included the prior Subchapter V Order. A motions panel granted NetJets' request for stay of the Confirmation Order pending appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L). We have jurisdiction under 28 U.S.C. § 158.[3]

---

[3] The interlocutory Subchapter V Order merged into the final Confirmation Order. *See United States v. Real Prop. Located at 475 Martin Lane*, 545 F.3d 1134, 1141 (9th Cir. 2008) (under merger rule, interlocutory orders entered prior to the judgment merge into the

## ISSUES

1.     Did the bankruptcy court err in determining that RS Air was "engaged in commercial or business activities" on the petition date?

2.     Did the bankruptcy court err by allocating the burden to NetJets to prove that RS Air was not eligible for subchapter V?

3.     Did the bankruptcy court abuse its discretion in determining that the law of the case doctrine precluded its review of the Subchapter V Order?

## STANDARDS OF REVIEW

The question of whether a particular activity constitutes "commercial or business activities" under § 1182(1)(A) is a legal question we review de novo, and the bankruptcy court's determination whether the debtor engaged in that particular activity is a factual question we review for clear error. *See Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 288-89 (9th Cir. BAP 2009) (we review questions of law and statutory interpretation of the Code de novo and the bankruptcy court's factual findings for clear error) (chapter 9 eligibility); *see also Watford v. Fed. Land Bank of Columbia*, 898 F.2d 1525, 1527 (11th Cir. 1990) (applying these standards of review to chapter 12 eligibility). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

Whether the bankruptcy court identified and applied the correct burden of proof is a question of law we review de novo. *Boruff v. Cook Inlet Energy*

---

judgment and may be challenged on appeal).

*LLC (In re Cook Inlet Energy LLC)*, 583 B.R. 494, 500 (9th Cir. BAP 2018).

We review the bankruptcy court's decision whether to apply the law of the case doctrine for an abuse of discretion. *See United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.   The bankruptcy court did not err in determining that RS Air was "engaged in commercial or business activities" on the petition date.

Under the Small Business Reorganization Act of 2019, commonly referred to as "subchapter V," Congress authorized eligible persons to avail themselves of streamlined chapter 11 bankruptcy relief designed to help small businesses.[4] Generally, a debtor is eligible to elect subchapter V if the debtor: (1) is a "person;"[5] (2) is "engaged in commercial or business activities;" (3) does

---

[4] The SBRA became effective on February 19, 2020. *See* 11 U.S.C. §§ 1181, et seq. Small Business Reorganization Act of 2019 (HR 3311), Pub. L. No. 116-54, 133 Stat. 1079 (Aug. 23, 2019). The statute as originally enacted defined the debtor under § 101(51D), in the same way as a small business debtor who does not elect to proceed under subchapter V. As part of the Coronavirus, Aid, Relief, and Economic Security Act (HR 748), Pub. L. No. 116-136, 134 Stat. 281, 116th Cong. 2d Sess. (Mar. 27, 2020), the definition was changed to temporarily increase the debt limit to $7,500,000 for debtors who elected subchapter V and included a sunset of one year. The one-year sunset for this temporary amendment was extended to March 27, 2022, by the COVID-19 Bankruptcy Relief Extension Act of 2021, Pub. L. No. 117-5 (Mar. 27, 2021). In this case, § 1182(1)(A) applies for the definition of a subchapter V debtor.

[5] An LLC is a "person." *Gilliam v. Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 717

9

not have aggregate debts in excess of the debt limit on the petition date; and (4) at least 50 percent of the debtor's debts arose from its commercial or business activities. § 1182(1)(A).

The only question here is whether RS Air was "engaged in commercial or business activities" within the meaning of § 1182(1)(A). The Bankruptcy Code does not define the phrase and case law is sparse. With one exception, no appellate court has weighed in on the subject. The trial courts that have reviewed it are divided as to its meaning.

A majority of courts have held that a debtor need not be "actively operating" on the petition date, but must be "presently" engaged in commercial or business activities on the petition date to satisfy § 1182(1)(A). *See Nat'l Loan Invs., L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 424-25 (Bankr. W.D. Pa. 2021); *Lyons v. Family Friendly Contracting LLC (In re Family Friendly Contracting LLC)*, No. 21-14213-TJC, 2021 WL 5540887, at *3 (Bankr. D. Md. Oct. 26, 2021); *In re McCune*, No. 20-12326-j13, 2021 WL 4782957, at *7-9 (Bankr. D.N.M. Oct. 13, 2021); *In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520-LVV, 2021 WL 3668037, at *2 (Bankr. M.D. Fla. July 23, 2021) ("operations" insinuates a fully functioning business but "activities" includes acts that are business in nature but fall short of an actual operating business); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 236-37 (Bankr. S.D. Tex. 2021); *In re Blue*, 630 B.R. 179, 189-90 (Bankr. M.D.N.C. 2021); *In re Offer Space, LLC*, 629 B.R. 299, 305-07 (Bankr. D. Utah 2021); *In re Ikalowych*, 629 B.R. 261,

(9th Cir. BAP 2004).

283-84 (Bankr. D. Colo. 2021); *In re Johnson*, No. 19-42063-ELM, 2021 WL 825156, at *6-8 (Bankr. N.D. Tex. Mar. 1, 2021); *In re Thurmon*, 625 B.R. 417, 422-23 (Bankr. W.D. Mo. 2020). Two courts have held that the debtor need not have been engaged in any commercial or business activities on the petition date to qualify for subchapter V, as long as the debtor was engaged in such activities at some point in the past. *See In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020) (finding that "engaged in" has no temporal limit); *In re Wright*, No. 20-01035-HB, 2020 WL 2193240, at *3 (Bankr. D. Colo. Apr. 27, 2020) (debtor need not be "currently" engaged in commercial or business activities on the petition date). Notably, those courts were two of the first to consider the issue.

We agree with the majority, that the term "engaged in" is inherently contemporary in focus and not retrospective. Thus, a debtor need not be maintaining its core or historical operations on the petition date, but it must be "presently" engaged in some type of commercial or business activities to satisfy § 1182(1)(A).

The next question is, when a debtor is no longer operational, what types of "activities" satisfy the requirement that the debtor be engaged in commercial or business activities. In using the common meanings of the terms and other statutory construction methods, courts generally have held that the scope of commercial or business activities is very broad and apply a "totality of the circumstances" standard. *See In re Rickerson*, 636 B.R. at 425-26 (reasoning that "winding down" is a business activity and could be enough for

§ 1182(1)(A) but not deciding the issue because debtor's entities had been inactive for years prepetition, with no assets, no employees, no accounts, and the debtor had no intent to reactivate any of the entities); *In re Vertical Mac Constr., LLC*, 2021 WL 3668037, at \*3 (concluding that maintenance of bank accounts, working with insurance adjusters and defense counsel to resolve claims, and selling assets all qualified as commercial or business activities); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 237 (concluding that actively pursuing litigation against a third party, collecting outstanding accounts receivable, maintaining its facility, selling an asset, and filing tax returns all qualified as commercial or business activities); *In re Blue*, 630 B.R. at 190 (concluding that debtor was engaged in business activities by working as an IT consultant for a non-related entity and by winding down her former IT business); *In re Offer Space, LLC*, 629 B.R. at 306-07 (while debtor was no longer operating, had no employees, had no intention to reorganize, and intended to liquidate any remaining assets, debtor was engaged in commercial or business activities by having active bank accounts and accounts receivable, exploring counterclaims in a pending lawsuit, managing its stock, and winding down its business and taking steps to pay creditors and realize value for its assets); *In re Ikalowych*, 629 B.R. at 284-85 (concluding that the W-2 wage-earner debtor performing wind down work and dealing with tax accountants and tax issues for his defunct LLC qualified as commercial or business activities).

Suffice it to say, courts are less likely to find sufficient commercial or business activities for purposes of § 1182(1)(A) where the debtor is an

12

individual who owns a non-operating business, especially where the business has been dissolved under applicable state law. *See In re Rickerson*, 636 B.R. at 425-26 (concluding that individual whose entities had been inactive for years prepetition with no ongoing activity of any type and had no intent to reactivate any of the entities was not engaged in commercial or business activities); *In re Johnson*, 2021 WL 825156, at *7-8 (concluding that individual debtors were not engaged in commercial or business activities where husband's former companies were defunct and both debtors were now W-2 wage earners, even though husband was currently serving as president in a non-related business); *In re Thurmon*, 625 B.R. at 423 (concluding that individual debtors who sold their business prepetition, were retired, and did not intend to return to business were not engaged in commercial or business activities, and keeping their empty shell LLC in good standing and the existence of accounts receivable was insufficient).

The bankruptcy court found that RS Air was engaged in commercial or business activities on the petition date by litigating with NetJets, paying its aircraft registry fees, remaining in good standing as a Delaware LLC, and filing its tax returns and paying taxes. In addition, RS Air intends to resume fractional jet ownership and flight operations with a different partner once able. We conclude that the activities identified by the bankruptcy court are "commercial or business activities" within the meaning of § 1182(1)(A). And the bankruptcy court correctly found that RS Air was "engaged in" these activities on the petition date. While NetJets wishes to split hairs about the

13

degree of RS Air's involvement in the Ohio litigation prior to and on the petition date, we do not view that factual issue as determinative.

NetJets argues that RS Air was not engaged in commercial or business activities either on or before the petition date because RS Air's activities lacked any motive to generate income or profit. NetJets contends that, to establish eligibility for subchapter V, the debtor must have a profit motive. Thus, the question is whether engaging in commercial or business activities incorporates a "pursuit of profit" requirement.

NetJets cherry-picks cases which it argues support its position that an eligible subchapter V debtor must have the intent to pursue profit. *In re Vertical Mac Constr., LLC*, 2021 WL 3668037, at \*3 (noting that the term "commercial" is commonly understood to involve commerce, and includes "occupied with or engaged in commerce or work intended for commerce," "of or relating to commerce," and "viewed with regard to profit"); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 236 (same); *In re Blue*, 630 B.R. at 189 (noting that "a person is engaged in commercial or business activities when she participates in the purchasing or selling of economic goods or services for a profit"); *In re Ikalowych*, 629 B.R. at 276 (holding that commercial or business activities means "any private sector actions related to buying, selling, financing, or using goods, property, or services, undertaken for the purpose of earning income"); *In re Johnson*, 2021 WL 825156, at \*8 (a person engaged in commercial or business activities is "a person engaged in the exchange or buying and selling of economic goods or services for profit").

In addition to discussing the definition for the word "commercial," the courts above went on to discuss the definition for the word "business," which is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of an **economic nature**." *Business*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/business (last visited Mar. 29, 2022) (emphasis added). Certainly, the depreciation tax benefits and the revenue generated by RS Air's flight operations or its acquiring and selling of its fractional aircraft interests are "dealings or transactions" of an "economic nature." Although NetJets tries to argue that no real tax benefit exists, that is contrary to its marketing strategy which touted tax benefits as a key advantage for fractional jet ownership.

Further, NetJets fails to note that the *Ikalowych* court went on to observe that § 1182(1)(A) speaks only to whether the debtor was engaged in commercial or business activities – "not whether the [d]ebtor was making a profit, actively operating, or intending to operate in the future." 629 B.R. at 285. That court further heeded:

> Interpretation of statutory phrases can be aided by considering the definitions of each of the words in a phrase; but simply stringing separate dictionary definitions together is not enough and might lead in the wrong direction. Instead, the Court must consider context and purpose in applying definitions.

*Id*. at 278. The court in *Blue* was also careful not to limit the meaning of "commercial or business activities" to basic dictionary definitions. 630 B.R. at 188-89.

15

Finally, the issue of a "profit motive" was not directly addressed in these cases. The few courts that have addressed it have held that § 1182(1)(A) does not require a debtor to be engaged in for-profit business to qualify for subchapter V. In *Ellingsworth Residential Community Association*, 619 B.R. 519, 520 (Bankr. M.D. Fla. 2020), an unsecured creditor argued that the debtor – a nonprofit homeowners association – was not eligible for subchapter V because, as a nonprofit, it did not "engage in commercial or business activities." The bankruptcy court disagreed and found that, based on the plain and unambiguous language of the statute, no profit motive is required. *Id.* at 521. It went on to hold that the many commercial or business activities the nonprofit debtor engaged in fit the "broad" categorization of such activities. *Id.* (e.g., contracting for goods and services, hiring professionals, filing regular tax returns, collecting assessments from its homeowners).

On appeal, the district court affirmed. *Guan v. Ellingsworth Residential Cmty. Ass'n* (*In re Ellingsworth Residential Cmty. Ass'n*), No. 6:20-cv-1243-WWB, 2021 WL 3908525, at *3 (M.D. Fla. Aug. 19, 2021), *appeal dismissed*, No. 21-12970-AA, 2021 WL 6808445 (11th Cir. Nov. 4, 2021). The district court reasoned that, although corporations involved in commerce can, and frequently do, have a profit motivation, the plain and ordinary meaning of the terms "commercial or business activities" does not require it. For support, the district court cited to Black's Law Dictionary, which notes that "business activities" can be either "the carrying out of a series of similar acts for the purpose of realizing a pecuniary benefit, or otherwise accomplishing a goal."

*Id.* (quoting *Doing Business*, Black's Law Dictionary (11th ed. 2019)). This broad definition would include not-for-profit businesses, and would not be limited to those having only a benevolent purpose.

The bankruptcy court in *Family Friendly Contracting LLC* also concluded that the plain and ordinary meaning of "commercial or business activities" does not require a profit motivation. 2021 WL 5540887, at *3. In so ruling, the court observed that courts have interpreted the phrase broadly in keeping with the SBRA's purpose and the language of § 1182(1)(A).

We note, and the *Ellingsworth* and *Family Friendly* courts observed, Congress chose not to exclude nonprofits or other persons who lack a profit motive from qualifying for subchapter V. And that makes sense, because churches, hospitals, and other nonprofit businesses are allowed to file for chapter 11 (or 7) relief. *See JBB Holdings, LLC v. Abundant Life Worship Ctr. of Hinesville, GA, Inc. (In re Abundant Life Worship Ctr. of Hinesville, GA, Inc.)*, No. 20-40959-EJC, 2020 WL 7635272, at *10 n.23 (Bankr. S.D. Ga. Dec. 16, 2020) (a church or other nonprofit entity can be a small business debtor) (citing *In re Ellingsworth Residential Cmty. Ass'n*, 619 B.R. at 521-22); *In re Charles St. African Methodist Episcopal Church of Bos.*, 478 B.R. 73 (Bankr. D. Mass. 2012) (religious corporation's nonprofit status did not disqualify it as a "corporation" eligible for chapter 11); *see also* § 101(27A) defining "health care business" to include an entity "organized for profit or not for profit"); 2 COLLIER ON BANKRUPTCY ¶ 109.02 (Alan N. Resnick & Henry J. Sommer, eds. 16th ed. rev. 2021) ("a nonprofit corporation, like a for-profit corporation, is eligible to file for relief

17

under the Code"). The only persons Congress excluded from subchapter V eligibility (other than by debt limitations) are those whose primary activity is the business of owning single asset real estate, corporate debtors subject to reporting requirements under certain sections of the Securities Exchange Act (15 U.S.C. §§ 78m or 78o(d)), or any debtor that is an affiliate of an issuer under 15 U.S.C. § 78c. *See* § 1182(1)(A) & (B).

Accordingly, we conclude that no profit motive is required for a debtor to qualify for subchapter V relief. To hold otherwise would wrongfully exclude nonprofits and other persons that lack such a motive. That RS Air had no profit motive did not render it ineligible for subchapter V.

**B.  The bankruptcy court erred by allocating the burden to NetJets to prove that RS Air was not eligible for subchapter V.**

The parties dispute who had the burden of proof as to RS Air's subchapter V eligibility: RS Air or NetJets. The Bankruptcy Code and Rules are silent on this issue. The bankruptcy court determined that NetJets, as the party challenging eligibility, had the burden. NetJets contends this was error. We agree.

The bankruptcy court rejected the Missouri bankruptcy case cited by NetJets – *In re Thurmon* – as contrary to Ninth Circuit law. *Thurmon* held, based on Eighth Circuit law, that the debtor has the burden to establish subchapter V eligibility. 625 B.R. at 419 n.4. The bankruptcy court believed it was bound by *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001), which it cited for the proposition that the party challenging chapter 13 eligibility under § 109(e) bears the burden of proof. However, *Scovis* made no

18

express, or even implied, ruling as to who has the burden of proof for establishing eligibility under § 109(e) outside of the context of plan confirmation. The bankruptcy court also relied on BAP cases involving motions to dismiss under § 707 and § 1112. *See Aspen Skiing Co. v. Cherrett (In re Cherrett)*, 523 B.R. 660, 668 (9th Cir. BAP 2014) (movant bears the burden to establish abusive chapter 7 filing under § 707(b)(1)); *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (9th Cir BAP 2014) (movant bears the burden to establish "cause" for dismissal of chapter 11 case under § 1112(b)).

Neither this Panel nor the Ninth Circuit Court of Appeals has decided the issue of who has the burden on subchapter V eligibility. However, in an objection to the debtor's eligibility for chapter 9 relief, we held that the debtor has the burden of establishing eligibility under § 109(c). *In re City of Vallejo*, 408 B.R. at 289 (citing *In re Valley Health Sys.*, 383 B.R. 156, 161 (Bankr. C.D. Cal. 2008)). Other circuit courts, as well as courts within this circuit, have held that the debtor has the burden of establishing eligibility for chapter 12 relief under § 109(f). *See First Nat'l Bank of Durango v. Woods (In re Woods)*, 743 F.3d 689, 705 (10th Cir. 2014) (citing cases); *Tim Wargo & Sons, Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re Tim Wargo & Sons, Inc.)*, 869 F.2d 1128, 1130 (8th Cir. 1989); *Baker v. Rosenberger (In re Rosenberger)*, No. 20-50093, 2020 WL 6940926, at *3 (Bankr. W.D. Va. Sept. 29, 2020) (debtor must put forward sufficient evidence to allow the court to find that she satisfies § 109(f) eligibility requirements, including the definitional § 101(18) requirement that she was "engaged in a farming operation" on the petition date); *In re Cooper*,

19

No. 10-66447-fra12, 2011 WL 3882278, at *1 (Bankr. D. Or. Sept. 2, 2011); *In re Powers*, No. 10-14557, 2011 WL 3663948, at *1 (Bankr. N.D. Cal. Aug. 12, 2011) ("The party filing a petition under Chapter 12 bears the burden of proving eligibility."); *In re Pandol*, No. 10-19733-B-12, 2010 WL 9488147, at *1 (Bankr. E.D. Cal. Sept. 29, 2010) (debtor has the burden to establish that he is a "family farmer"). Finally, in involuntary cases, our circuit places the burden of proving eligibility on the petitioning creditors. *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546, 548 (9th Cir. 1998) ("The filing of an involuntary case requires the petitioning creditor to meet the burden of proof on the main elements under § 303."); *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. 338, 343 (9th Cir. BAP 2019).

The reasoning of the courts placing the burden on the debtor to establish eligibility for relief in a chapter 12 case is persuasive for our purposes here, considering that chapter 12 contains the analogous requirement that a "family farmer" be "engaged in a farming operation" to be eligible. *See* § 101(18). Nearly every court deciding the issue of who bears the burden of proving eligibility for subchapter V has held that it is the debtor. *See In re Rickerson*, 636 B.R. at 422; *In re Family Friendly Contracting LLC*, 2021 WL 5540887, at *2; *In re Vertical Mac Constr.*, 2021 WL 3668037, at *2; *In re Port Arthur Steam Energy, L.P.*, 629 B.R. at 235; *In re Blue*, 630 B.R. at 187; *In re Offer Space, LLC*, 629 B.R. at 304; *In re Ikalowych*, 629 B.R. at 275; *In re Sullivan*, 626 B.R. 326, 330 (Bankr. D. Colo. 2021); *In re Johnson*, 2021 WL 825156, at *4; *In re Thurmon*, 625 B.R. at 419 n.4; *In re Blanchard*, 2020 WL 4032411, at *2; *In re Wright*, 2020 WL

20

2193240, at *2; *but see In re Body Transit, Inc.*, 613 B.R. 400, 409 n.15 (Bankr. E.D. Pa. 2020) (objecting party is the de facto moving party bearing the burden to prove the debtor is not entitled to subchapter V relief); *Hall L.A. WTS, LLC v. Serendipity Labs, Inc. (In re Serendipity Labs, Inc.)*, 620 B.R. 679, 680 n.3 (Bankr. N.D. Ga. 2020). We agree with the majority view and hold that the burden to prove eligibility for subchapter V should be placed on the debtor, especially considering the many advantages subchapter V offers debtors over a "traditional" chapter 11: total plan exclusivity (including modifications) and no disclosure statement requirement; the ability to obtain a discharge on the effective date; and the inapplicability of the absolute priority rule. It also makes sense to place the burden on the debtor because debtors are in the best position to prove that they are qualified to be in subchapter V.[6]

Nevertheless, the bankruptcy court's error in allocating the burden to NetJets in the objection to eligibility was harmless because RS Air met its burden. RS Air demonstrated that it was engaged in commercial or business activities on the petition date, which was the only criterion challenged by NetJets on eligibility.

---

[6] We note the case of *Ho v. Dowell (In re Ho)*, 274 B.R. 867 (9th Cir. BAP 2002), cited by RS Air. The thrust of that case was a debtor's eligibility to proceed under chapter 13 given the debt limits set by § 109(e). The concurrence noted that a creditor has the burden to persuade the court to grant a motion to dismiss a chapter 13 case for § 109(e) ineligibility, whereas the debtor has the burden of demonstrating § 109(e) eligibility for purposes of plan confirmation. *Id.* at 882-83. The majority did not comment on this issue. In any case, we are not bound by *Ho*. The statement is dicta in a concurrence. Further, the bankruptcy court's ruling on RS Air's subchapter V eligibility was not in the context of a motion to dismiss where one might expect the movant to have the burden.

**C.     The bankruptcy court failed to recognize the exceptions to the law of the case doctrine, but such error was harmless.**

The doctrine of law of the case provides that a "court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). To apply, "the issue in question must have been decided either expressly or by necessary implication in the previous disposition." *Id.* (cleaned up). But there are exceptions to this discretionary doctrine. A court may revisit a previously resolved question when: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Id.* at 155 (citations omitted).

NetJets argues that the bankruptcy court abused its discretion by applying law of the case to its earlier ruling that RS Air was eligible for subchapter V, when new evidence presented at the final confirmation hearing defeated RS Air's eligibility. NetJets argues that the bankruptcy court failed to consider new evidence that: (1) RS Air had not reported any income since at least 2004; (2) Perlman's alleged tax benefit flowing from his ownership of RS Air was not a benefit and but rather a loss because the cost of producing the benefit exceeded the amount of the tax benefit itself; (3) the financial model supporting RS Air's income calculations treated expenses as "income," did not comply with GAAP, and was inconsistent with the definition of "disposable income" under the Code; and (4) RS Air's disposable income would be

negative using a strict definition of "disposable income." NetJets contends that the bankruptcy court's decision was particularly egregious because the subchapter V designation was an interlocutory ruling. *See Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (interlocutory orders are subject to modification at any time prior to final judgment); *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (court may reconsider and revise an interlocutory decision for any reason, even absent new evidence or an intervening change in the law).

The problem facing NetJets is that all of the alleged new evidence it argues that the bankruptcy court should have considered relates to the fact that RS Air had no net profit. As we stated above, a profit motive or net profit is not required for subchapter V eligibility. In addition, much of this evidence was not "new." In overruling NetJets' initial objection, the bankruptcy court found that RS Air was created to receive a depreciation tax benefit marketed by NetJets rather than to generate a net profit. At a prior confirmation hearing, Perlman testified that RS Air would likely have no projected disposable income within the next five years, if ever. We also find it somewhat disingenuous for NetJets to complain about this purported new evidence that was consistent with its long-standing argument that RS Air was not a business with income, and consistent with RS Air's position that jet share ownership's primary business value is a tax benefit, not income. Accordingly, any failure by the bankruptcy court in not considering the exceptions to law of the case was harmless error.

23

**CONCLUSION**

For the reasons stated above, we AFFIRM both the Subchapter V Order and the Confirmation Order.